## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**MIKE ALVAREZ**                                                  **CIVIL ACTION**

**VERSUS**                                                        **NO.  13-6405**

**N. BURL CAIN, WARDEN**                                          **SECTION "R"(2)**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.      STATE COURT PROCEDURAL BACKGROUND

The petitioner, Mike Alvarez, is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 10, 2007, Alvarez was

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 5.

charged by bill of information in Jefferson Parish with three counts of aggravated crime against nature upon P.B., a juvenile under the age of 17 and at least three years younger than the offender.[3]  The Louisiana Fifth Circuit Court of Appeal summarized the facts of the case as determined at trial in relevant part as follows:

> P.B., the victim in this matter, was fourteen years old at the time of trial. She testified that, in the summer of 2001, when she was six years old, she was living at Duke Street in Kenner with her mother, T.B., and her mother's boyfriend, Caesar Alvarez, who is Alvarez's brother. P.B. testified that Alvarez "made me suck his private part" three times that summer. The first time, she was in the living room when Alvarez called her and told her to come downstairs. Alvarez then told P.B. to get on her knees and suck his private part. P.B. complied. Alvarez also showed her a sex tape. Afterwards, he made her get on top of him and was "making me roll on him and things." He got her off of him, and then made her "suck his thing" again. The second time, Alvarez was in the bathroom when he told P.B. to suck his private part. According to P.B., some "white stuff" came out and Alvarez told her to spit the white stuff into the sink and wash her mouth out. The third time, P.B. was in the kitchen. P.B. told her mother about these incidents, but she did not take her to a doctor or to the police.  P.B.'s mother did tell Caesar Alvarez about it. Thereafter, after P.B.'s mother lost custody of her children, P.B. told her grandmother about Alvarez's actions.
>
> Detective Joseph McRae, of the Kenner Police Department's Criminal Investigations Division, testified that, in February of 2007, he was contacted by the Children's Hospital Care Center regarding sexual abuse of P.B. P.B. was at the care center with regard to physical abuse by her mother. Detective McRae interviewed P.B. thereafter. During that interview, P.B. told Detective McRae that "Mike" made her "suck" his "ding-a-ling." Detective McRae arranged an appointment and interview at the Jefferson Children's Advocacy Center. P.B. identified Alvarez from a photographic line-up during the subsequent interview.
>
> Detective McRae interviewed Alvarez after he was arrested.  Detective McRae testified that, during the interview, Alvarez adamantly denied P.B.'s allegations. He also told Detective McRae that he had never been inside the Kenner residence and had only seen the children twice, once outside the

---

[3]St. Rec. Vol. 3 of 6, Bill of Information, 3/25/10 (as amended 10/7/10, 10/20/10).

residence, and once in a department store. Alvarez declined to make a recorded statement.

Erika Dupepe, a forensics interviewer with the Gretna Police Department, testified that she was stationed at the Jefferson Children's Advocacy Center in 2007. A DVD recording of an interview with P.B. at the Center was made and identified by Ms. Dupepe and was played for the jury. In the interview, P.B. stated that Alvarez was staying at the house she shared with her mother and Caesar Alvarez to "get back on his feet." P.B. described how Alvarez made her "suck his private part" on three occasions. On one of the three occasions, P.B. indicated that she swallowed "white stuff," which she promptly spit out. She tried to tell her mother and Caesar Alvarez about what had happened, but Caesar refused to believe it.

S.B., P.B.'s grandmother, testified that she has never met Alvarez before. According to S.B., in the summer of 2001, P.B. was living with her mother on Duke Street in Kenner. S.B. visited the family during that time but did not see Alvarez there. S.B. testified that she learned of the offenses "in 2000 ... No it was in '99, I believe." She indicated that P.B. was living with her at the time of trial because P.B.'s mother had abused the children, and the children had been taken away by OCS.

J.B., P.B.'s brother, testified that he, his mother, Caesar Alvarez, and Alvarez lived on Duke Street in Kenner in 2001. According to J.B., Alvarez did not reside at the Duke Street residence but, rather, was there "from time-to-time. Every other day, he would spend the night ... sometimes, you know." He described Alvarez's visits as "very frequent." J.B. testified that P.B. told him what Alvarez had done approximately one or two months after the offenses occurred.

State v. Alvarez, 71 So.3d 1079, 1081-82 (La. App. 5th Cir. 2011); State Record Volume 1 of 7, Louisiana Fifth Circuit Court of Appeal Opinion, 10-KA-925, pages 2-4, June 29, 2011.

Alvarez was tried before a jury on June 17, 2010, and found guilty as charged on all three counts.[4] The court sentenced Alvarez on July 16, 2010, to 15 years in prison on

---

[4]St. Rec. Vol. 1 of 7, Trial Minutes, 6/17/10; Jury Verdict, 6/17/10; St. Rec. Vol. 5 of 7, Trial Transcript, 6/17/10.

each count to run consecutively and without benefit of parole, probation or suspension of sentence.[5]

The State thereafter filed a multiple offender bill charging Alvarez as a second felony offender.[6]  At a hearing on December 13, 2010, the state trial court adjudicated Alvarez a second offender.[7]  The court vacated the original sentences and re-sentenced Alvarez on each count to 30 years in prison at hard labor as a multiple offender with the sentences to run consecutively and without benefit of parole, probation or suspension of sentence.[8]

On direct appeal to the Louisiana Fifth Circuit, Alvarez's appointed counsel argued two errors: (1) The state trial court erred in allowing evidence of Alvarez's prior conviction to be used against him at trial. (2) The State failed to prove that Alvarez committed three counts of aggravated crime against nature on the dates alleged in the bill of information.[9]  The Louisiana Fifth Circuit affirmed the conviction on June 29, 2011,

---

[5]St. Rec. Vol. 1 of 7, Sentencing Minutes, 7/16/10; St. Rec. Vol. 5 of 7, Sentencing Transcripts, 7/16/10.

[6]St. Rec. Vol. 1 of 7, Multiple Bill, 8/9/10.

[7]St. Rec. Vol. 6 of 7, Multiple Bill Hearing Minutes, 12/13/10; Sentencing Transcript, 12/13/10; see also, Multiple Bill Hearing Minutes, dated 12/16/10.

[8]St. Rec. Vol. 6 of 7, Multiple Bill Hearing Minutes, 12/13/10; Sentencing Transcript, 12/13/10; Nunc Pro Tunc Sentencing Minutes, 11/28/11 (for entry dated 12/13/10).

[9]St. Rec. Vol. 5 of 7, Appeal Brief, 10-KA-925, 11/23/10.

finding no merit in the second claim.[10]  The court determined that the first claim was not preserved for appellate review by contemporaneous objection as required by La. Code Crim. P. art. 841(A).  The court also noted and corrected an omission in the original sentence and required the trial court to notify Alvarez of the sex offender registration requirements.  Alvarez did not seek further review of this ruling.

In a separate appeal lodged after the multiple offender sentencing, Alvarez's appointed counsel argued that his sentence was excessive and that the State failed to present sufficient proof that Alvarez was a second offender.[11]  The Louisiana Fifth Circuit affirmed the adjudication and sentence, finding that the evidence was sufficient to support his adjudication as a second felony offender.[12]  The court also held that the excessive sentence claim was not preserved for appeal in part as required under La. Code Crim. P. art. 881.1 and that the sentence otherwise was not unconstitutionally excessive. After noting several harmless errors on the face of the record, the court directed the trial court to reissue its commitment order to reflect that the sentences were to be served at hard labor.  The state trial court complied on December 14, 2011.[13]

---

[10] Alvarez, 71 So.3d at 1079; St. Rec. Vol. 1 of 7, 5th Cir. Opinion, 10-KA-925, 6/29/11.

[11] St. Rec. Vol. 6 of 7, Appeal Brief, 11-KA-223, 3/28/11.

[12] State v. Alvarez, 78 So.3d 265 (5th Cir. 2011); St. Rec. Vol. 7 of 7, 5th Cir. Opinion, 11-KA-223, 11/15/11.

[13] St. Rec. Vol. 6 of 7, Trial Court Letter, 12/14/11.

The Louisiana Supreme Court denied Alvarez's subsequent writ application without stated reasons on April 13, 2012.[14] His conviction and sentence became final 90 days later, on July 12, 2012, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); Burton v. Stewart, 549 U.S. 147 (2007) (in a criminal case, judgment includes conviction and sentence, therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

In the meantime, on June 4, 2012, Alvarez submitted to the state trial court an application for post-conviction relief asserting the following grounds for relief:[15] (1) Trial counsel failed to argue that a victim's testimony that is impeached, contradictory or incredible cannot alone support conviction. (2) Trial and appellate counsel failed to argue a Sixth Amendment Confrontation Clause violation. (3) Trial counsel failed to move for directed verdict of acquittal during trial.  In a supplement to the application, Alvarez

---

[14]State v. Alvarez, 85 So.3d 1245 (La. 2012); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2011-KO-2767, 4/13/12; La. S. Ct. Writ Application, 11-KO-2767, 12/14/11 (dated 12/9/11); St. Rec. Vol. 1 of 7, La. S. Ct. Letter, 2011-KO-2767.

[15]St. Rec. Vol. 1 of 7, Application for Post-Conviction Relief, 6/7/12 (dated 6/4/12).

argued that trial counsel failed to object to inadmissible hearsay related to the out-of-court victim identification and that this error was not asserted by appellate counsel.[16]

After the State responded, the state trial court denied Alvarez's application in an order dated October 23, 2012, and reissued March 7, 2013, finding the claims meritless under the standards set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and related state case law.[17]  The Louisiana Fifth Circuit denied Alvarez's writ application, finding no error in the trial court's ruling.[18]  The court also refused Alvarez's request for rehearing as procedurally improper.[19]  The Louisiana Supreme Court denied Alvarez's related writ application without stated reasons on October 11, 2013.[20]

## II.    <u>FEDERAL HABEAS PETITION</u>

On December 17, 2013, the clerk of this court filed Alvarez's petition for federal habeas corpus relief in which he asserts that he received ineffective assistance of counsel for the following reasons:[21]  (1) Trial counsel failed to assert that a victim's testimony that is impeached, contradictory or incredible cannot alone support conviction. (2) Trial

---

[16]St. Rec. Vol. 1 of 7, Supplement to Application for Post-Conviction Relief, 6/27/12.

[17]St. Rec. Vol. 1 of 7, Trial Court Order, 3/7/13; State's Response, 10/2/12.

[18]St. Rec. Vol. 7 of 7, 5th Cir. Order, 13-KH-227, 4/10/13; 5th Cir. Writ Application, 13-KH-227, 3/13/13 (postmarked 3/8/13).

[19]St. Rec. Vol. 7 of 7, 5th Cir. Order, 13-KH-227, 4/25/13.

[20]<u>State ex rel. Alvarez v. State</u>, 124 So.3d 1087 (La. 2013); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2013-KH-1035, 10/11/13; La. S. Ct. Writ Application, 13-KH-1035, 5/7/13 (postal metered 5/3/13).

[21]Rec. Doc. No. 1, pp. 20, 23.

and appellate counsel failed to raise a Sixth Amendment Confrontation Clause violation. (3) Trial counsel failed to move for directed verdict of acquittal during trial. (4) Trial counsel failed to object to inadmissible hearsay related to the out-of-court victim identification and this error was not raised by appellate counsel.

In its response in opposition to Alvarez's petition, the State concedes the timely filing of the petition and exhaustion of state court remedies.[22]  The State argues that the denial of relief by the state courts was not contrary to or an unreasonable application of Strickland and the claims are without merit.

III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[22]Rec. Doc. No. 10.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Alvarez's petition, which, for reasons discussed below, is deemed filed in this court on October 29, 2013.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State concedes and I find that the petition was timely filed and that his claims are exhausted and not in procedural default.

IV.    STANDARDS OF MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based

---

[24]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Alvarez's petition was filed by the clerk of this court on December 17, 2013, when the filing fee was paid after denial of pauper status. Alvarez's signature on the petition is dated October 28, 2013. However, the pleadings were received from Alvarez by prison officials on October 29, 2013, and were e-mailed by prison officials to the court that same day. Rec. Doc. No. 5, p.1. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

10

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 787 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.     EFFECTIVE ASSISTANCE OF COUNSEL

Alvarez argues that his trial counsel failed to argue that the victim's testimony was

insufficient to support the verdict, assert Confrontation Clause issues, object to hearsay

identification evidence and move for directed verdict of acquittal.  He also contends that

his appellate counsel was ineffective for failure to assert on appeal the Confrontation

Clause issue and trial counsel's ineffective assistance in failing to object to hearsay

identification evidence.

The issue of ineffective assistance of counsel is a mixed question of law and fact.

Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789

(5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial

of relief was contrary to or an unreasonable application of United States Supreme Court

precedent.

The standard for judging the performance of counsel was established by the United

States Supreme Court in Strickland, 466 U.S. at 688, in which the Supreme Court

established a two-part test for evaluating claims of ineffective assistance of counsel,

requiring petitioner to prove both deficient performance and resulting prejudice.  Id., 466

U.S. at 697.  The Supreme Court first held that "the defendant must show that counsel's

representation fell below an objective standard of reasonableness."  Id. at 687-88.

Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 131 S. Ct. at 792 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S. Ct. at 788. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications

> is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788.

Thus, scrutiny of counsel's performance under Section 2254(d) is "doubly deferential." Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690; Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Id., 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied,

528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    <u>TRIAL COUNSEL'S PERFORMANCE</u>

1.    <u>Victim's Testimony</u>

Alvarez argues that his trial counsel was ineffective because he allowed the State to rely solely on P.B.'s testimony to establish the elements of the crime.  He claims that his counsel failed adequately to challenge the victim's unsupported testimony and require the State to present other evidence to corroborate her testimony.

Alvarez alleges that P.B.'s testimony was not credible because she told a Child Advocacy Center ("CAC") psychologist about four instances of abuse but only testified about three at trial. He also claims that his counsel failed to investigate ways to cross-examine the victim regarding the time frame of the incidents of sexual abuse and use discrepancies in the evidence to challenge the reliability of her testimony.

In its reasoned opinion on post-conviction review, the state trial court referenced the Louisiana Fifth Circuit's findings on appeal that P.B.'s testimony was consistent when she relayed three incidents of abuse at the CAC and the jury trial.  The court also reiterated that the evidence was sufficient where the jury simply found the victim credible and rejected Alvarez's version of events.  The court found that counsel had adequately questioned P.B. and witnesses about the timing and number of incidents,

while Alvarez had not indicated what further investigation by counsel would have produced or how counsel's performance was deficient.

The state courts' findings and conclusions are fully supported by the record.  The trial testimony reflects that P.B. reported three incidents of sexual abuse by Alvarez during 2001 when Alvarez stayed in her family home.[25]  At trial, the CAC psychologist did not count how many incidents P.B. described to her and deferred to the video of the interview for determination of how many events were reported.[26] The record also establishes that during the first occasion of abuse, Alvarez had P.B. perform fellatio, climb on top of him to rub her body on him, and perform fellatio again before he sent her back upstairs.[27] Although Alvarez may have considered this incident two sex acts, it appears from the record that the CAC psychologist, the State and P.B. considered it as only one event.

Alvarez's counsel questioned the witnesses about the timing of the incidents and certain inconsistencies in the dates.  Counsel attempted to counter P.B.'s testimony and the State's evidence by showing that Alvarez, who testified on his own behalf at trial, did not live in the home at any time, much less during the periods P.B. claimed to have been abused. Counsel cross-examined P.B. about her memory and numerous details and

---

[25]St. Rec. Vol. 5 of 7, Trial Transcript, pp. 91, 92-93, 6/17/10.

[26]Id., p. 55.

[27]Id., pp. 92-93.

differences between her early statements and her testimony.[28]  He elicited from her that

she did not remember the relevant dates, only that she was six years old.[29]

The record shows that the focus of the defense was to discredit P.B. and all of the

State's circumstantial evidence.  The fact that this defense was not successful does not

equate to ineffective assistance.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir.

2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally

deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after

it has proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable." Strickland, 466 U.S. at 689 (citations omitted).  The record reflects that

trial counsel thoroughly challenged the State's evidence.  As resolved by the state courts,

the jury simply did not believe Alvarez and found P.B. credible.

Alvarez has offered no facts that could have been found through further

investigation to assist counsel in his cross-examination of P.B. or any other witness.  A

petitioner cannot show prejudice as to a claim that his counsel failed to investigate

without adducing what the investigation would have shown.  Diaz v. Quarterman, 239

F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that

some evidence is required to show that "the decision reached would reasonably likely

have been different.").  Alvarez has not established that his counsel allowed P.B.'s

---

[28]Id., at pp. 98-102.

[29]Id., at p. 100.

testimony to go unchallenged.  He has not established that counsel's performance was deficient or prejudicial to the defense and is not entitled to relief on this issue.

2.    Confrontation Clause

Alvarez alleges that his trial counsel failed to raise a Sixth Amendment Confrontation Clause violation when the State introduced the tape of P.B.'s CAC interview.  He claims that the tape was admitted without the defense being able first to cross-examine P.B., who testified at trial after the tape was played.  He also claims that his counsel should not have allowed Detective McRae to reference the CAC report as the basis for his investigation into P.B.'s claims of abuse.

The state trial court denied Alvarez's ineffective assistance of counsel claim based on its post-conviction findings that the tape was admissible because P.B. was present to be questioned at trial and that Deputy McRae's testimony was not hearsay because he referenced the report only to explain how detectives learned about the case and did not testify about the substance of the CAC's report.  This was the last reasoned state court opinion on the issue.

Under Louisiana law, a videotape of a child's interview with the CAC is admissible when the child testifies at trial and can be questioned about statements made in the videotape.  La. Rev. Stat. §15:440.1 et seq.; e.g., State v. Borden, 986 So.2d 158, 169-70 (La. App. 5th Cir. 2008).  Alvarez clearly had this opportunity and his counsel thoroughly questioned P.B. about the statement at trial.  Any challenge to the

admissibility of the videotape would have been meritless, and counsel does not perform deficiently by failing to make meritless objections.  See Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); see also, Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

In addition, the introduction of the videotape did not violate the Confrontation Clause of the Sixth Amendment.  The Confrontation Clause prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). While the Supreme Court in Crawford declined to provide a comprehensive definition of "testimonial," it did indicate that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68.  The Crawford Court noted that testimonial statements include "ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."  Id. at 51; see Bullcoming v. New Mexico, __ U.S. __, 131 S.

Ct. 2705, 2713 (2011) (defendant has the right to cross-examine the person who actually performed testing or examination of evidence); <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305, 310-11 (2009) (expert report is "functionally identical" to testimonial statement ).

Crawford is premised on a defendant's right to cross-examine. 541 U.S. at 53-54. No violation of the Confrontation Clause occurs where the declarant testifies at trial and is subject to cross-examination. <u>United States v. Owens</u>, 484 U.S. 554, 560 (1988); <u>California v. Green</u>, 399 U.S. 149 (1970); <u>Carson v. Collins</u>, 993 F.2d 461, 464 (5th Cir. 1993), <u>cert. denied</u>, 510 U.S. 897 (1993). Alvarez had a full opportunity to cross-examine P.B. about the allegations of sexual abuse and the assertions made to the CAC psychologist in the videotaped statement. As the Fifth Circuit has held, under these circumstances, "[t]he confrontation clause requires no more." <u>Carson</u>, 993 F.2d at 464. Based on the foregoing, Alvarez's counsel had no basis to object to the introduction of the taped statement and did not act outside of the scope of competent counsel. <u>Clark</u>, 19 F.3d at 966.

As to Detective McRae's reference to the CAC report, as the state court determined, the detective's reference was admissible under La. Code Ev. 801(C) because it was offered as the basis for how detectives learned about the allegations of sexual abuse. Under federal law, an out-of-court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way. <u>United States v.</u>

Brown, 560 F.3d 754, 764 (8th Cir. 2009).  Furthermore, the author of the report itself, the CAC psychologist, was present at trial and was subject to cross-examination by the defense.

Thus, Alvarez has failed to establish that counsel acted deficiently or prejudicially in failing to raise these objections or that the videotape of P.B.'s testimony was inadmissible. Alvarez has failed to point to any out-of-court testimonial evidence presented at his trial that was not subject to cross-examination. He has shown no violation of the Sixth Amendment or the standards set forth in Crawford to which his counsel should have objected.  For these reasons, the state court's denial of relief was not contrary to, or an unreasonable application of, Strickland, and Alvarez is not entitled to relief on this claim.

3.      Directed Verdict of Acquittal

Alvarez argues that his trial counsel's performance was deficient in that he failed to move for a directed verdict of acquittal when the State rested its case. On post-conviction review, the state trial court denied relief on this claim because counsel was not deficient in failing to urge a motion not authorized by Louisiana law.

"It is well settled that the trial court has no authority to grant a directed verdict in a criminal jury trial."  State v. Parfait, 693 So.2d 1232, 1242 (La. App. 1st Cir. 1997). Instead, a motion for judgment of acquittal is allowed under state law only in judge-tried

cases.  La. Code Crim. P. art. 778; <u>Parfait</u>, 693 So.2d at 1242.  Because Alvarez was tried before a jury, there was no legal basis for counsel to urge such a motion.

As noted above, an attorney's performance is not rendered constitutionally ineffective due to his failure to assert a meritless motion.  <u>See</u> <u>Kimler</u>, 167 F.3d at 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument . . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."); <u>Sones v. Hargett</u>, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point."); <u>United States v. Gibson</u>, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

4.    <u>Out-of-Court Victim Identification</u>

Alvarez argues that his counsel should have objected to Detective McRae's testimony that P.B. identified Alvarez in a photographic line-up because P.B.'s trial testimony did not confirm it.  He alleges that the detective's testimony was hearsay and a Confrontation Clause violation.  The state trial court denied relief on this claim, finding that the introduction of the identification evidence was not hearsay under La. Code Ev. art. 801(D)(1)(c) and called for no objection by counsel.

Louisiana law excepts this type of identification evidence from its hearsay rules even if it raises inferences for the jury.  "'[T]his permissible inference does not make the statement hearsay.' [<u>State v. Bagneris</u>, 804 So.2d 831, 834 (La. App. 4th Cir. 2001)].  A

22

witness' act of selecting a picture of a suspect from a photographic lineup presented by police is not hearsay because it constitutes a statement of identification as contemplated by La. C.E. art. 801(D)(1)(c) . . ." State v. Jackson, 115 So.3d 1155, 1164-65 (La. App. 4th Cir. 2013).  This rule is bolstered by state law provisions, in compliance with Crawford that exempt from hearsay the use of out-of-court statements and identifications when the declarant testifies and is available for cross-examination.  Jackson, 115 So.3d at 1165 (citing La. Code Ev. art. 801(D)(1)(c)).  The Louisiana Supreme Court has held that "[i]f at trial the eyewitness fails to remember or denies that he made the identification, the previous statements of the eyewitness can be proved by the testimony of a person to whom the statement was made, and the statement can be given substantive effect."  State v. Johnson, 774 So.2d 79, 80 (La. 2000) (citing United States v. Brink, 39 F.3d 419, 426 (3d Cir. 1994)); see State v. Duncan, 91 So.3d 504, 5216-17 (La. App. 4th Cir. 2012) (officers' testimony as to witnesses' identification of a defendant in statements and in selecting a defendant in a photographic lineup is not hearsay).

In this case, neither Louisiana law nor Crawford provided any basis for Alvarez's counsel to object to Detective McRae's testimony or to the introduction of testimony regarding the photographic line-up, even if P.B. did not, or was not asked to, confirm the identification.  Detective McRae and P.B. were present at trial and both were subject to cross-examination by defense counsel regarding the out-of-court identification. As discussed above, any challenge to the admissibility of that evidence would have been

meritless, and counsel need not make meritless objections to be constitutionally effective. <u>Clark</u>, 19 F.3d at 966; <u>Smith</u>, 907 F.2d at 585 n.6; <u>Koch</u>, 907 F.2d at 530.  The denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>. Alvarez is not entitled to habeas relief on this claim.

B.    <u>APPELLATE COUNSEL</u>

Alvarez argues that he was denied effective assistance of counsel on appeal when his appointed counsel failed to raise the Confrontation Clause issues addressed above and trial counsel's purported error in failing to object to hearsay identification evidence.

Persons convicted of a crime are entitled to effective assistance of counsel in their first appeal of right.  <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985).  The <u>Strickland</u> standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 170 (5th Cir. 1997).   To prevail on a claim that <u>appellate</u> counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>Smith</u>, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  <u>Green v. Johnson</u>, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing <u>Evitts</u>,

469 U.S. at 394).  On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).  Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.  <u>See</u> <u>Anderson v. Quarterman</u>, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.  As such, failure to raise these issues did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); <u>Kossie v. Thaler</u>, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).  Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  <u>Smith</u>, 528 U.S. at 288;  <u>Jones</u>, 463 U.S. at 754.

Having reviewed Alvarez's claims, and for all of the reasons discussed above, I find that this record contains no non-frivolous claim that should have been raised by appellate counsel.  Alvarez has not demonstrated any deficient or prejudicial act by his

trial counsel that warranted scrutiny on appeal, and any such argument would have been meritless for the reasons discussed above.  Appellate counsel's failure to assert baseless issues on direct appeal cannot be deemed either deficient performance or prejudicial, since there was no reasonable probability that these arguments would have prevailed on appeal.

Accordingly, the denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Alvarez is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Alvarez's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[30]

New Orleans, Louisiana, this ____12th____ day of August, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[30]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.